IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-00154-MR-WCM

| | | |
|---|---|---|
| DEAN WHITSON, Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant. | ) | MEMORANDUM AND RECOMMENDATION |

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I. Procedural Background

In October of 2019, Dean Whitson ("Plaintiff") protectively filed an application for disability insurance benefits alleging disability beginning on June 30, 2017. Transcript of Administrative Record ("AR") 259; 261-262.

On March 1, 2022, following two administrative hearings, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 57-89; 36-55; 9-34.

Plaintiff appealed to this Court, and on March 24, 2023, a consent motion by the Commissioner was granted and this matter was remanded for further administrative proceedings. AR 2070-2073.

On May 15, 2024, following an administrative hearing, the ALJ issued another unfavorable decision. AR 1981-2009. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of degenerative disc disease, osteoarthritis, status-post left hip arthroplasty, chronic obstructive pulmonary disease (COPD), obstructive sleep apnea, gout, obesity, depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and personality disorder. AR 1987. After determining that Plaintiff's impairments did not meet or medically equal any of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work… except he can occasionally climb ramps or stairs and can occasionally climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, crouch, and crawl. The claimant should have avoided more than occasional exposure to extreme heat, extreme cold, humid or outdoor environments, or work environments containing exposure to wetness. The claimant should have avoided more than occasional exposure to vibration or fumes, odors, dust, gases, industrial chemicals, or poorly ventilated areas. The claimant could handle and finger frequently with the bilateral upper extremities. The claimant could understand, remember, and carry out simple instructions and to maintain concentration, persistence, and pace on those types of tasks for two-hour periods over the course of an eight-hour workday; could tolerate occasional interaction with the public; and could adapt to routine changes in a work setting. The claimant

> could not engage in production rate pace such as an assembly line or work with strictly enforced hourly production quotas.
>
> AR 1990.

Applying this RFC, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled on June 30, 2017. AR 1998-2000.[1]

## III. Plaintiff's Allegation of Error

Plaintiff contends that when developing Plaintiff's RFC, the ALJ failed to consider certain evidence regarding Plaintiff's need to elevate his lower extremities during the workday.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505(a); 416.905(a). The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The

[1] June 30, 2017 was both Plaintiff's alleged onset date and the date Plaintiff was last insured. AR 1987. "To establish eligibility for Social Security disability benefits, a claimant must show that he became disabled before" his date last insured. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Evidence created after a claimant's date last insured may be considered when an "inference of linkage" exists between that evidence and the claimant's condition before that date. Id. at 341.

burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is required, however, to build "an accurate and logical bridge from the

evidence to his conclusion" that the plaintiff's RFC sufficiently accounts for his limitations. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018); see also Mayberry v. Berryhill, No. 5:17-cv-175-GCM, 2018 WL 3543085, at *3 (W.D.N.C. July 23, 2018) ("A failure to provide an adequate explanation frustrates the ability of the Court to conduct meaningful review and determine whether the ALJ's decision is supported by substantial evidence."); Darby v. Berryhill, No. 1:16cv366-RJC, 2018 WL 310136, at * (W.D.N.C. Jan. 5, 2018) ("if the ALJ shows her work, then the Court will most likely find substantial evidence supporting her ultimate conclusion").

At the same time, it is the claimant's burden to establish that he suffers from an impairment which limits his functional capacity. 20 C.F.R. 404.1505; 416.905; see Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

Here, the ALJ acknowledged Plaintiff's testimony that Plaintiff was having difficulty being on his feet and that, as early as 2016, he needed to elevate his legs during the day due to swelling. AR 1991.

The ALJ also, however, considered the twelve-month period preceding June 30, 2017, and explained that Plaintiff's "last medical presentation" in July 2016 reflected "normal musculoskeletal function with normal range of motion, no tenderness, [and] no swelling." AR 1991 (citing AR 746 (July 9, 2016 Discharge Summary)).

With respect to the time period after June 30, 2017, the ALJ noted that

on June 30, 2018 (a year after Plaintiff's date last insured), Plaintiff complained of swelling in his hands, knees, and feet, was treated for vasculitis, and on exam exhibited mild swelling in the hands and feet with full range of motion. AR 1994 (citing AR 1527 (reflecting mild swelling of knees but full range of motion)). While the ALJ recognized in his May 15, 2024 decision that Plaintiff's impairments "may currently be more limiting" and that the record reflected Plaintiff's ongoing treatment for gout and treatment for "DVT and pulmonary embolism" two years after the Plaintiff's date last insured, the ALJ concluded that there was an

> absence of evidence to show that these impairments or this level of severity could have reasonably been present prior to June 30, 2017, the date the claimant last met the insured status requirements of the Social Security Act.... There is no evidence to corroborate the claimant's testimony that he experienced significant leg swelling at any time prior to the date last insured, and it appears this only became an issue after his pulmonary embolism/DVT in August 2019. Moreover, progress notes from April 2020 show that the claimant's lower extremity edema was markedly improved.
>
> AR 1996-1997.

Plaintiff contends that, contrary to the ALJ's conclusion, the medical record reflects that he experienced lower extremity swelling and pain both before and after June 30, 2017.

With respect to the period before June 30, 2017, Plaintiff cites treatment

records reflecting some observations by medical providers of Plaintiff's lower extremity edema. These records, though, do not include any recommendations or discussions regarding the need for Plaintiff to elevate his extremities. See AR 419 (March 5, 2013 record reflecting "significant varicosities" in both lower extremities); AR 611 (February 23, 2015 record noting trace ankle and pretibial edema); AR 733-734 (May 3, 2016 record noting trace edema in bilateral extremities). Further, other records cited by Plaintiff regarding his condition prior to June 30, 2017 do not reflect lower extremity edema. See Doc. 6 at 7 (citing AR 809 (December 24, 2018 record reflecting no swelling into the thigh or lower leg, no varicosities in the lower extremity, and no swelling)).

With respect to the period after June 30, 2017, Plaintiff cites treatment records indicating that Plaintiff experienced lower extremity edema and pain. These records, however, do not appear to contradict the ALJ's conclusion that Plaintiff's edema became more limiting after the date Plaintiff was last insured. See AR 1369 (Plaintiff's June 30, 2018 treatment record reflecting mild swelling of knees but full range of motion with stiffness); AR 913 (January 21, 2019 treatment record reflecting Plaintiff's report of worsening gout symptoms including pain, swelling, and stiffness); AR 1273 (August 10, 2019 treatment note indicating that Plaintiff presented to the emergency room with the chief complaint of shortness of breath and reported "some right leg swelling today" and that on physical exam, "some edema on the right lower extremity"

was observed); AR 1096 (August 14, 2019 treatment record reflecting Plaintiff's self-report of being "generally asymptomatic" but indicating on physical exam that Plaintiff had marked right lower extremity swelling to the thigh); see also AR 1413 (August 21, 2019 record reflecting right leg edema), AR 1117 (August 30, 2019 record reflecting Plaintiff's report of lower extremity pain and swelling with an onset of three weeks prior and that on physical exam, severe edema of the right leg was observed), AR 1162 (September 4, 2019 record reflecting right leg swelling and including a recommendation for compression stockings), AR 826-827 (October 7, 2019 record reflecting bilateral lower extremity edema).

Consequently, the undersigned is not persuaded that the ALJ's failure to discuss the records cited by Plaintiff requires remand.[2] See Williams v. Saul, No. 0:20-CV-1656-PJG, 2021 WL 1248386, at *4 (D.S.C. Apr. 5, 2021) (noting that while the plaintiff's arguments "may support" a finding that her condition

---

[2] Plaintiff also contends that although the ALJ correctly stated that Plaintiff's edema was noted to be "markedly improved" in April of 2020, a later 2020 treatment record reflects that Plaintiff presented with an obvious antalgic gait and some swelling around his ankle. See AR 1093 (April 15, 2020 treatment note reflecting Plaintiff's report that his edema was "markedly improved"); AR 1466 (October 29, 2020 treatment note indicating that Plaintiff reported his symptoms had progressed such that he could only walk for short distances, presented with an obvious antalgic gait, and exhibited no swelling into the thigh but mild swelling in the ankle). Plaintiff further notes that medical records from 2021 reflect continuing edema. AR 1627-1628 (July 30, 2021 record reflecting right and left leg edema); AR 1642 (July 31, 2021 record reflecting bilateral trace edema). The ALJ, though, seemed to agree that Plaintiff continued to suffer from edema after his date last insured. See AR 1996 ("the claimant's impairments may currently be more limiting….").

worsened after her date last insured, "the applicable standard for DIB requires that the claimant be disabled on or before her date last insured"); Booker v. Colvin, No. 1:13–CV–2033, 2014 WL 6816878, at *5 (D.S.C. Dec. 4, 2014) ("Unlike in Bird where there was no medical evidence prior to the claimant's date last insured, 699 F.3d at 339, here, the record before the ALJ included [pre-DLI] medical testimony, none of which indicated that Booker needed to keep his legs elevated."); see also Patterson v. Kijakazi, No. 1:20CV1030, 2022 WL 103884, at *9 (M.D.N.C. Jan. 10, 2022) (two treatment notes reflecting "one-time isolated" suggestions that plaintiff elevate her legs did not "equate to a physical restriction or a judgment" about plaintiff's work-related restrictions) (emphasis in original) (citing Cruz v. Commissioner of Soc. Sec. Admin., No. CV-19-04460, 2020 WL 3567033, at *2 (D. Ariz. July 1, 2020) (holding that "ALJ was not obligated to include a need to elevate the legs when sitting in the RFC finding," because the doctor "merely recommended that [the plaintiff] elevate her legs when sitting" and "did not state it was necessary for work" (internal quotation marks and brackets omitted)), aff'd, No. 20-16651, 2021 WL 5357231 (9th Cir. Nov. 17, 2021) (unpublished); McKenzie v. Colvin, No. 4:14-CV-00049, 2015 WL 12552035, at *10 (W.D. Va. Nov. 5, 2015), report and recommendation adopted sub nom. McKenzie v. Astrue, No. 4:14-CV-00049, 2015 WL 12552036 (W.D. Va. Dec. 4, 2015) (finding that the ALJ was correct to exclude a limitation in the RFC regarding the plaintiff's need to

elevate his leg to waist-height because "the ALJ provided specific reasons for his credibility determination, including moderate clinical findings, record evidence showing McKenzie's improved functioning, and his lack of medical treatment … [which] are sufficient reasons to support the ALJ's credibility finding").

## VI. Recommendation

Considering the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

Signed: August 27, 2026

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).